I should announce the case it's number 18-2648 City of Philadelphia v. Attorney General Ms. Allen, Mr. Ketchum. Thank you, Your Honor. May it please the Court. Catherine Allen on behalf of the Attorney General. I would like to reserve eight minutes for rebuttal. This case is about conditions on federal law enforcement grants that are designed to ensure the minimal cooperation that whom the United States seeks to remove. In the INA... You have the three special conditions and what is the authority for these particular conditions? Sure, Your Honor. I'll start with the notice and access conditions. And the Assistant Attorney General imposed those conditions pursuant to his authority under 101-102-A-6, which provides that the AAG's authority includes the power to impose special conditions on all grants and determine priority purposes for formula grants. And here, the notice and access conditions are special conditions that he imposed on the Byrne JAG grants. And we think that they clearly fall within the special conditions authority. Does the fact that it is a formula grant change the calculus of the argument here? I don't think so, Your Honor. The provision clearly applies to both formula grants and non-formula grants. The text of the provision states that he has the authority to... that the authority includes imposing special conditions on all grants and determining priority purposes for formula grants. Does it make a difference that some of the... many of the conditions that have been imposed in the past are really more ministerial or go to the integrity of the funding process and rather than something that is substantive like the ones that we have here? Your Honor, of course, there are some conditions that are ministerial and go to, you know, the mere administration of how the grant program works. But there's a long history of OJP imposing a number of different types of conditions. And we've noted a few in our brief, including, for example, the prohibited expenditures list, which, you know, originally rose out of a working group created by an executive order, but wasn't otherwise required by law. It was imposed as a special condition by the AAG. In addition, the mandatory wear policy for years, from 2012 until 2016, that was imposed as a special condition pursuant to this authority. And we think that this condition, which really, I think it's very important to focus on what these conditions do. They sort of... if the special conditions authority means anything, it includes the authority to impose these types of conditions, which they are just designed to ensure that the very departments that are receiving the federal funds are not turning around and exercising their law enforcement in a way that directly interferes with federal law enforcement. Well, when you say they're not turning around and exercising, then you're getting beyond something that really has to do with the grant. You're actually imposing conditions that aren't related to the grant. What's the limit that you would say can be imposed on these types of conditions? What's the outline factor or the limiting factor? There doesn't seem to be any. Well, Your Honor, first, I would like to note that these conditions are limited to the program or activity that's funded by the grant. And that's true of all three of these conditions that we're talking about here. How so? I don't get the relationship to the program or activity. That's an explicit limit in the conditions. The conditions require that for the program or activity that's funded by the grant, the applicant will have, for the notice condition, will have in place a policy that they will provide notice when DHS presents them with a formal request for notice of an alien's release date. Similarly for access, with respect to the program or activity that's funded by the grant, they will have in place a policy that permits DHS to access aliens in their correctional facilities. So they cover every imaginable grant, correct, that's given under this program? Yes. These conditions are being imposed in all of the fiscal year 2017 grants. My point is just that the conditions and the certification are limited to the program or activity that's funded by the grant. And that's the same for, for example, you know, anti-discrimination conditions. Those are limited to the program or activity that's funded by the grant. But how do these relate to the programmatic integrity of the grant? Sorry, the program or activity that's funded by the grant. But I am saying that most of the conditions, most of the conditions that I have seen that have been found permissible relate to the programmatic integrity. And these do not seem to do that. They seem to go beyond. And if I can supplement that, when you look at 101, 102A, the first five seem to do exactly that. They relate to the program coordination, whatever it might be. But then six would seem to follow from those, and yet you're saying that somehow six, which exercise such other powers and functions, may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the AG. Don't you need to have some sort of independent power given elsewhere other than here? No, Your Honor. I think it's important to look at the statutory history and what happened with this particular provision. So prior to 2006, this provision stated that the AAG could exercise the powers elsewhere vested in this chapter. Where are they elsewhere vested then? Excuse me? Where is the elsewhere? Sorry, well, I'm explaining what the law was prior to 2006. It stated that the AAG could exercise powers elsewhere vested in this chapter or delegated by the Attorney General. Then in 2006, in the same statute that created the Berne JAG program, Congress added the including clause, and that clause must mean something. Under the city's interpretation, it doesn't mean anything. It doesn't authorize the AAG to do anything that he couldn't do previously. And there would be nothing to clarify if the statute already vested the AAG with the authority to impose special conditions and some other provision. There wouldn't be a need to add this clause to clarify whether he could do that. But including has to be a subset of all the powers vested. Or delegated. Or delegated. Your Honor, I don't think that's correct. We've noted in our brief that the Supreme Court… But isn't including a subset of… In many instances, it would be because it would be clarifying the category previously described. But here, there was nothing to clarify. If a statute already provides that the AAG can impose special conditions, or if the Attorney General has already delegated that power to him, there is no reason that Congress would have added the including clause to say that he could do those things that he already could do. And the legislative history confirms that this provision, that this clause, the including clause, was added to, quote, allow the Assistant Attorney General to impose special conditions and determining priority purposes for all grants. Are there other special conditions that are across the board applicable to all grants, as compared to special conditions having to do with certain specific grants? Well, Your Honor, the Assistant Attorney General's authority isn't limited to only imposing uniform conditions across all grants. We think that's why Congress chose the word special to refer to the conditions. And the way that the Burns-Jagg Program works is that once the application is accepted, OJP then sends the grant award to the grant recipient, and it includes all of the special conditions, and the recipient has 45 days to review the special conditions and decide whether to accept the funds and agree to comply with the conditions. What's a special condition that would be most analogous to the conditions imposed here? A special condition that passes muster. In another context. In another context. And you can say, oh, these special conditions are just like those, and so these are definitely within the authority of the Attorney General. Well, Your Honor, I'm not sure about conditions in other grant programs. The briefing is just focused on the conditions imposed in this grant program. And I think, again, it's important to note that these conditions, they are very targeted at ensuring that the grant recipient isn't engaging in law enforcement in a way that directly interferes with the federal government's law enforcement, so that we're not funding a police department that is acting in a way that's directly contrary to the federal government's own law enforcement efforts. Section 10228 reads, Prohibition of federal control over state and local criminal justice agencies. Prohibition of discrimination. And it goes on to say that nothing in this chapter or any other act shall be construed to authorize any department, et cetera, to exercise any direction, supervision, or control over any police force or any other criminal justice agency of any state or political subdivision thereof. And it's housed in the administrative provisions part of the same chapter as 10153. Does this pose a problem to you? Or is this something that has to be overcome? Or you say it's overcome? Your Honor, I don't think that that provision is a problem. The legislative history, which was discussed in a Fourth Circuit case that I apologize I don't have the name off the top of my head, indicated that that was enacted to ensure that there wasn't the federalization of local police forces. And that's clearly not what's happening here. We're not directing how localities spend the funds. There still is a lot of flexibility in terms of the broad criminal justice purposes of the grants. All the conditions do is try to ensure that the INA operates smoothly in the way that Congress envisioned. And here we're talking about when two different sovereigns are regulating the same people. And Congress chose to allow state criminal prosecution to generally proceed before federal immigration removal proceedings. Congress instead could have chosen to provide that aliens would immediately be removed and couldn't continue in state criminal custody. But instead, Congress allowed them to stay in state criminal custody based on the premise that when that custody ends, the state or locality won't interfere with the federal government's ability to assume custody of the alien and proceed with federal removal proceedings. Can you address how 1373 does not run afoul of Murphy? Yes, Your Honor. 1373 is a preemption provision. Pardon me? A preemption provision. And Murphy explained... Preemption has to do with private actors, does it not? Yes. And 1373 is part of the INA's regulation of individual aliens. Just as in Murphy discussed the airline... But it talks about... It restricts the ability of government entities to prohibit or restrict sending, receiving, et cetera, et cetera. I mean, it acts entirely on local law enforcement, does it not? In just the same way that the Airline Deregulation Act did in Murphy. The Supreme Court in Murphy explained that the Airline Deregulation Act was constitutional as a preemption provision and it was phrased... I'm talking about the commandeering in Murphy versus NCAA. That's what I'm talking about as well. In Murphy, the Supreme Court described the different types of preemption. And when it was discussing express preemption provisions, it explained that it's a mistake to be confused by the way in which an express preemption provision is phrased. And then it explicitly noted a preemption provision that stated no state shall enact or enforce any law that that type of preemption provision is constitutional. And that's exactly the same type of preemption provision that we have at issue here. 1373 is part of Congress's regulation of individual aliens. Just as the provision... I would urge your honor to look at where Murphy discusses the Airline Deregulation Act. This is the exact same type of preemption provision. It fits within a larger regulatory scheme of private individuals. Good. While you're on this, tell us again why Prince doesn't apply in the commandeering section here. Sure, your honor. Prince is different because Prince involved the actual conscription of state executives into the enforcement of federal law. The statute at issue in Prince required the state executives to actually perform the background checks. Here, Section 1373 doesn't impose any requirement like that. And the majority in Prince, as well as Justice O'Connor's concurrence, recognize that mere information sharing is different than the actual conscription of executives into enforcing federal law. And here, again, what we're talking about, this is information that the state has because it has aliens in its criminal custody that the United States seeks to remove. And the only way that that operates smoothly and safely is if the United States can take custody of the individuals when their state sentence is released. And the INA specifically contemplates this because, in some instances, it requires the federal government to take custody of individuals with certain criminal histories immediately upon their release. And that simply won't work if states are releasing the individuals without telling the federal government. And again, we're only talking about, you know, with respect to the notice condition, we're only talking about when DHS sends a specific request to the local facility, when it has probable cause to believe that the alien is removable. And so it specifically asks when the alien is going to be released. And as even the city recognizes, it's much safer for the federal government to transfer custody of these individuals, you know, within a controlled facility than to try to pick them up at large and on the street, which poses public safety threats to the public generally, as well as to the officers that are, you know, that are engaging in the arrests. You may not have this information, and if not, I'll ask your opponents. But does – do you know what the city's policy is with respect to lock and track information or access? Does ICE have access to the PARS system and other self-reported information on immigration? Do you – are you aware of that? Your Honor, I believe that there have been some changes since the district court issued its ruling in terms of what access ICE has. I believe that ICE's access to PARS has since been cut off. But we think – and I believe that the district court recognized that at the time of its opinion, ICE did have access to lock and track – or should be given access to lock and track, and at that time it had access to PARS. And I think this highlights sort of the oddity of the city's position here, because the city – the city's position is that it will share information regarding immigration status, including address, whereabouts, fingerprints, names of – of suspected criminal aliens. The only thing that the city won't share is the date that it's going to release the alien. But even there, it will share that information if the request is accompanied by a judicial warrant. And so it's – there's no – there's no evidence for the city's suggestion that – that the immigrant community would somehow know the difference between whether a judicial warrant or an administrative warrant was used for release date. And I think this just highlights, you know, the – kind of the oddity of the city's position, given that it will share a lot of information. I'm a little confused about your discussion of Murphy. Murphy found that prohibiting a state from authorizing an activity ran afoul of the Tenth Amendment, did it not? Yes, Your Honor. So how can prohibiting a state or local entity from restricting something – how can that be different from Murphy and pass muster under the Tenth Amendment? Sure, Your Honor. The court in Murphy explained that the statute at issue in Murphy could not be considered a preemption provision because it was not part of the federal government's regulation of individuals. The federal government was not itself authorizing gambling. Here, by contrast, 1373 is a preemption provision that is part of Congress's – How is it a preemption provision when it does exactly the same thing that was the case in Murphy, prohibiting a state from authorizing an activity, prohibiting a state from restricting an activity? How is that different? It's different because it's – here, the federal government is regulating private individuals. The preemption provision – It's regulating what the state or what the locality can do. It's restricting what a government entity can do, just like was the case in Murphy, is it not? It does, but in Murphy, the court drew a distinction between – so a preemption, just to step back, an express preemption provision is always phrased as a restriction on what laws states can enact. And the court in Murphy explained that express preemption provisions don't run afoul of the Tenth Amendment when they're part of the federal government's regulation of private individuals. And that is exactly what 1373 is. It regulates private individuals by saying that a locality cannot restrict – Sorry, Your Honor, I'm not being clear. There's a difference between the language of the preemption provision and the statutory context, the larger statutory scheme that it's a part of. In Murphy, the preemption provision was not part of a statutory scheme that regulated private individuals. Here, the preemption provision is part of the INA's regulation of individual aliens. And that is the exact grounds that the court in Murphy warned that it would be a mistake to be confused by the way that a preemption provision is phrased. And the court explicitly said that in the context of the Airline Deregulation Act, where there, again, you have a lot of federal regulations that were – sorry, you had a federal statute that said that there couldn't be certain types of regulations on airlines. But it was part – and that was part of the federal government's larger regulation of private entities. And here we have the same thing. This case is like the Airline Deregulation Act, not like the statute that was at issue in Murphy. But didn't both statutes unequivocally dictate what a state legislature, in this case a city, may or may not do? Yes, and every preemption provision is phrased like that, Your Honor. The question is whether it's part of a regulation of private individuals. And here it unquestionably is. And I would also note that we don't – I mean, I want to answer all of your concerns about – any concerns that you have about 1373's constitutionality. We think that it's valid both as a preemption provision, because it's part of the INA's regulation of individuals, and it's separately valid as an information-sharing requirement. But I also would like to note that we don't think that this court needs to address that issue. The controversy here is about grant conditions. And the grant conditions, regardless of whether 1373 is valid as a standalone statute under the Tenth Amendment, the certification condition is valid under the Spending Clause. Well, the question is, then, what does applicable mean if you're under 1373? Or under – well, it's 101-53. Right. Yes, Your Honor. We think that applicable federal laws within the meaning of the Burns-Jagg statute is referring to laws that apply to the grant recipient and that are germane to the Burns-Jagg program. And we think 1373 satisfies those requirements. But we think it was error for the district court to go beyond the grant controversy, the conditions in the grant, and reach out and take the extraordinary step of declaring an act of Congress unconstitutional. And so we think that once this court resolves the controversy surrounding the three grant conditions, it wouldn't be appropriate to go farther and – Maybe it's dumb question time, but why wasn't there an argument made as to whether there should not be Chevron deference to what applicable means? I'm not sure, Your Honor. I think – I mean, this came up in the Ninth Circuit, and it wasn't in the briefing. But the question – is the statute – it's arguably ambiguous. And the only thing I could come up with is maybe under Meade, under Step 0, there's no authority given by Congress to actually formulate the types of special conditions. Well, Your Honor, we think that it's a legal question about whether a law would qualify as an applicable federal law. And so we think that once – you know, the Congress used very capacious terms, all other applicable federal laws, and we think that 1373 easily fits within that. What does applicable mean? It refers to laws that apply to the applicant. But it says all other applicable federal laws. Does that – is it limited? Is it limited to grants or grantees or, you know, the Bankruptcy Code, for example? Obviously not, right? Your Honor, it's limited to laws that are germane to the purposes of the Burn-Jag program. But again, here, the city's interpretation is that it refers to laws that generally apply to federal grantees. But there are other instances in which Congress has wanted certifications with respect to laws that govern grantees, and Congress has used that explicit language. Here, instead, it used the phrase all other applicable federal laws. And we think that can easily – Well, it says all applicable federal laws. And it's the fourth of four conditions that all relate to the specific grant. So it would seem that the applicable would have to relate to the grant, would it not? Otherwise, it'd say all federal law. Your Honor, the provision states that there should be a certification that the applicant will comply with all provisions of this part and all other applicable federal laws. And we think that Congress purposely chose the broad terms all other applicable federal laws. Back in 2016, the Department of Justice determined after a neutral inspector general's report that 1373 was an applicable federal law and that numerous jurisdictions were likely not in compliance with it. Chris, if it's unconstitutional, it's not an applicable federal law. I'm going to jump in here to violate already what I just said at the outset. Keith, would you have at least five more minutes on it? Your Honor, I think that there are two separate questions here. One is whether, as a statutory matter, whether Congress intended 1373 to qualify as an applicable federal law. The fact that it's applicable here as a funding condition means that it is an applicable federal law in this instance. Even if, as a standalone matter, it wasn't constitutional, that wouldn't undermine Congress's intent to want a certification of compliance with it. And again, I would like to, Your Honor, if you have any additional questions about Murphy, I want to be clear that we think that 1373 is constitutional under Murphy, under the explicit distinction that the Court drew between the statute in Murphy and the statute in the Airline Deregulation Act. Could you address the judicial warrant? I think Tony had a question. I'm sorry. I was going to ask the exact same question. Before you sit down, we'd like to hear about your take on the judicial warrant. The judicial warrant I find troubling, and I'd like your view on it, as would Judge Rendell. We find that troubling as well, Your Honor. It clearly goes beyond the scope of the controversy at issue here, which had to do with grant conditions, whereas the warrant requirement is being imposed on the Department of Homeland Security that's not a party to this case, is not a party to the grant program. The district court reached beyond the controversy here and imposed an affirmative warrant requirement. There's no basis in law. The city doesn't defend it on the grounds that there was any basis in law for imposing it. Instead, the city asserts that it has no practical effect. But, of course, there's a difference between the city having a policy that it won't share release dates and a district court order requiring the government to obtain warrants when it wants to ask for information because it seeks to transfer custody in a safe way. And, again, this is directly contrary to the INA, which 1226A provides for administrative warrants, and there's a long history of administrative arrest warrants for removal in this country, and there was no basis for the district court to impose a judicial warrant requirement that is clearly one that Congress itself chose not to require. I'm fine. That was my question. I'm fine. I'm fine. All right. We'll get you back. If there are no further questions, thank you. Thank you. Thank you, Judge Ambrose, and may it please the Court, Neal Katyal for the city. For my friend to win, this Court has to reverse every one of the four independent grounds that Judge Bailson held after a lengthy trial. His statutory holding, his constitutional rulings under the Tenth Amendment and Spending Clause, his findings about the city's substantial compliance, and the APA. They need to run the table. Let me start where, Judge Ambrose, you started, the narrow way, I think, for us to win, and that's the way the Seventh Circuit has already found, which is this Court should find the Attorney General lacked the statutory authority to add the three conditions to Congress's mandatory grant formula program. What's the limit on the conditions that can be imposed? So we think the limit is exactly what the Justice Department has historically viewed as the limit. There are basically three buckets, and there are 53 different conditions, Judge Rendell, that have been imposed. They're in the appendix to pages 390 to 400. Virtually all of them fall into three baskets. One is where a statute says that a grantee is encumbered in some way. The second is a certification that the funds are supplanting, are not supplanting, they're supplementing existing local grants. And then the third is programmatic and financial information. And, Judge Rendell, I think your question, you know, to my friend on the other side, was give me any analog to what you're doing here, which is an absolute 100% cutoff of these funds unless the city as a whole complies, not just with the use of funds, but with the entire thing. What was her answer? Her answer was nothing. The best answer she gave you was that there was a prohibition in there for prohibited expenditures. That argument boomerangs. If you look at the government appendix at page 11, that has the statute in there, and there's a specific statutory authority. It is 10105D2, which prohibits grantees from certain expenditures, like luxury goods and the like, and similar items. That's the way the Justice Department since 1977 has always understood this program. The Burn Shack program is one of, as Judge Sirica, you were saying, it's a mandatory grant program. It's not one that gives the Attorney General discretion. Rather, the whole idea was to take that away and say Washington, it turns out, doesn't know best. And the Attorney General has very limited discretion under this program. If you adopt their construction, and this is what the Seventh Circuit found, you do massive violence to the statute. You destroy the architecture of the whole thing because, as Judge Randall, you said, what is the limit to the other side? The Attorney General can impose any free-floating condition that he wants. He could say, well, you've got to comply with some arcane interpretation of the Fair Labor Standards Act or the Endangered Species Act or possibly even something that's not even in any statute, as the notice and access conditions are. Okay, then why can't he? Why can't he impose these broad conditions? Because I think the Supreme Court has been very clear for decades in cases like Train and the Seventh Circuit in the city of Chicago case that this is Congress's spending power. That's a core responsibility of Congress. And the executive doesn't have the ability to do violence to Congress's appropriations. And that's exactly what this does. Although under the spending power, the relationship between the nature of the restriction and the law can be pretty broad. I mean, the relationship between highways and teenage drinking. Certainly there's a relationship here. So absolutely, Judge Randall and Judge Sirica. There is a relationship with law enforcement, for sure. For purposes of the spending clause, you know, under Judge Sirica, your opinion in 2002 in Koslo, we agree that, you know, it's a much looser standard. But our point to you is you don't have to get there. The Doctrine of Constitutional Avoidance says first they have to have statutory authority for what they are doing. And just as the Seventh Circuit found, just as every court to consider this has found, that there is no statutory authority for what they are doing. So they may have broader latitude under the spending clause. We can talk about that. I think that's a harder argument, truthfully, for us to win. I think we're right. But the first question is, do they have the statutory authority in the first place to impose these conditions? And the answer to that undoubtedly has to be no, given the structure of this particular statute. Because this does strip the Attorney General of discretion. If you looked at 101-02A, and you go to the last portion, exercise such are the powers as may be vested in the Assistant Attorney General pursuant to this chapter, or by delegation of the Attorney General, and then it says including placing special conditions on all grants. And we've argued that that's a subset. What if it said and placing special conditions on all grants? Would that make life different? I think it might make it a little bit better. But, you know, I think the key point here, and this is what the other courts have found, like the Seventh Circuit, is the first part. It said the Assistant Attorney General shall, quote, exercise such other powers as may be vested elsewhere in the code. That isn't a way to actually give extra powers. That's just saying this is a who statute. She says we're making the statute meaningless. Absolutely not. What we're saying, and what Congress does, and this is a bread and butter statute, like all through the code, when Congress sets up an office, they say, what are the powers of this office? Here in 2006, the Assistant Attorney General was empowered. Before she had four programs under it. Now there's five because of the Bureau of Justice Statistics in 2006 being brought in. And what this statute does is it says, you want to know who is going to exercise the special conditions, pal? It's the Assistant Attorney General. It doesn't create some free-floating power to impose any condition that the Assistant Attorney General wants. It just says you can exercise the powers that are given to you elsewhere in the code. I had asked Ms. Allen why there was no argument pertaining to Chevron if there was an ambiguity in connection with these particular statutes, whether it be 101-02 or 101-53. And as I said, I only came up with one possible reason that maybe Congress, at step zero, hadn't really delegated this authority to do so. But is there any other reason as to why it's not being argued? Well, putting my former hat on and trying to think about this, I think the reason would be that the Justice Department has historically taken the opposite position for decades. And so it's a little difficult to assert Chevron deference when you're flipping a position as much as they are here. It's certainly waived here. And, of course, we think it's not ambiguous. And there are cases like the Sherwin-Pentecostal case at the Supreme Court from 2015 which say you have to look for the canons of construction, including canons like the Circuit City canon, and ask, is this statute really ambiguous before providing any deference? Well, my guess as to why my friend on the other side is not seeking deference is because of the shift in positions that we're seeing here and something that Judge Bailson isolated, particularly in his discussion of the Administrative Procedures Act. The same issue came up in the Ninth Circuit oral argument. And as I recall, the government attorney hadn't developed it and was kind of finally said, well, yeah, okay, but it's not really being relied on. I wasn't quite sure of the reasoning. Yeah, and I think it would be pretty dangerous for the Chevron. I mean, if they wanted to rely on it, I think it may have ancillary consequences for Chevron itself if they did because Chevron should be stretched this far to encompass a statute like this and to argue that it's applicable or that it's a special condition. I mean, this is a special condition unlike any other special condition anywhere in the Code. The ACLU brief on this is quite devastating in saying there is no program anywhere in the Code that gives a 100% funding cutoff to the Attorney General when a grantee is violating some condition. Rather, if anything, Congress specifies and says things like you can have a 3% dock or a 10% dock or something like that if you don't meet a particular statutory requirement. Would you be fighting those if that were the case here? No, no, no. I mean, we absolutely believe that if Congress imposes certain conditions on grantees, and they're all through the Code, NEPA, Title VI, things like that, those are things in which Congress has statutory authority to do and the Attorney General has statutory authority to impose. Does it mean anything that the last administration started treating 1373 as a law? That was applicable. Applicable, right. So certainly in 2016, in a blip of time, for once they did, and we think that that actually highlights the problem here. I mean, the separation of powers is built on the idea that nobody is an angel, it doesn't matter who the President is or the Attorney General, and they can pick up these powers and use them to ends of their choosing, even motivated by the best of reasons. And it's the job of this Court, as the train case says, to police the use of executive discretion and to not allow attorneys generals of whatever party to say, this vague statute allows us to impose such very, very severe conditions. So we think that that's a problem. We think that that's actually a feature, not a bug, of our argument, that, look, this can happen with any administration. It turns out that the Justice Department historically has not viewed it that way. There was one blip from 1977 on, and we have the manuals that are in the New York State's amicus brief going all the way back. That is the way that it has been interpreted. And even now, even now, in the Justice Department's assurances form, this is at the appendix, page 368, it still takes the old position. It says that you must, quote, seek compliance with all federal laws, statutes, and regulations applicable to the award. Applicable to the award. It doesn't allow the attorney general to just simply say applying the entire, any statute that might conceivably apply to the entity as a whole. Is the notice provision really such a severe provision for the city? Well, we do think it is severe, and, you know, there's been a whole trial on that. Commissioner Ross's testimony and Director Abernathy's testimony on this, I think, is quite devastating because when you do provide that notice, first of all, I mean, you know, a lot of these people are detained only for four hours, an average of 14 hours, and they want 48 hours. And the notice, which is just literally impossible when you're detaining people for short amounts of time. But more importantly, what the city found, and that's why these policies go back for a long period of time. These aren't just recent vintage. The city has found that when you require things like notice, it starts to blur that relationship between ICE and the city and induces people not to seek social services. There's an amicus brief filed by eight different social services organizations in Philadelphia that highlights some of the testimony at trial about this particular point. I understand that. Can you tell us what ICE does have access to? Do they have access to PARS, self-reported information, lock and track information? Right, so on July 26th, the city did suspend access to PARS for ICE. And, you know, the Justice Department made a big deal of this, went on TV that night and so on, complaining about that. Their brief was filed a month later. There's nothing about PARS, so I don't think it's relevant to, as this case comes to the court, maybe relevant to other things. And Judge Bailson, of course, didn't rely on PARS in his decision. To the contrary, at page A129, he said PARS access is not really a big deal because it's not accurate, doesn't contain any release information and the like. So as this case comes to the court. Isn't there a certain amount of overlap? Excuse me, I'm sorry. Isn't there a certain amount of overlap? There's a little bit of overlap, but really PARS, you know, PARS only doesn't include any citizenship information. It only includes country of birth, you know, where someone was born, but it doesn't include citizenship information. So a little bit of overlap. With respect to that question about 1373, we think the simplest way to deal with that is to say, as every court to consider the question, that citizenship status and immigration status is not a release date. The plain text of the statute in 1373 only talks about those two buckets, citizenship status and immigration status, and a release date is neither of those. And court after court has said that. Information regarding or any, it doesn't come under that? I don't think so. It's not information regarding citizenship or immigration status. It's, you know, it's tangentially related to deportability or removability, but Congress, you know, knows exactly how to say that. You know, Judge Oreck in the San Francisco decision actually even cited a statute, 1373, excuse me, 1367, which is passed at the same time as 1373, which talks about, quote, disclosure of any information which relates to an alien, any information which relates to an alien. That's precisely what you don't have here. And Judge Rendell, I heard you yesterday in the other immigration case invoking the Rousselot canon, which is this idea that Congress, you know, knows how to say something. And if they, in the contemporaneous statute, didn't say it in one place, but arguably said or clearly said it in another, that is a very, very telling thing here. And here, you know, Congress eight times has been asked by the Justice Department, by other folks, to impose these spending conditions on 1373 and to say and to do exactly what they're trying to do. Every single time that legislation has failed. And so what they're trying to do now is smuggle it in through these vague statutes. Judge Rendell, do you agree that 1373 is an applicable federal law with respect to the 101-53-A? Not at all. Not at all. So we don't think you even... But back to the point you just made, if Congress does know how to specifically limit applicable laws to certain statutes, I'm looking at 42 U.S.C. 16-154-G1, says that a federal officer must administer a program in a manner consistent with applicable federal laws and then governing awards of financial assistance, contracts, and other agreements. So it's specifically limited. Here, there is no limit. Well, I think the limit is, first of all, what is applicable federal law. And other applicable federal law. And under the Circuit City Canon, which Congress is presumed to know as they draft the statute, here you have a specific term first, which is all provisions of this part, and then it's followed by the residual clause, quote, all other applicable federal laws. Yeah, and all other federal laws. Right. And so, which is exactly what the Circuit City case had, which was and any other employee was the language there. And what the Supreme Court said there is you look to the first part in defining the second. And here, that makes a lot of sense, because otherwise you allow the Justice Department, the Attorney General on his whim, to do violence to the entire architecture of what Judge Sirica noticed was the mandatory grant, formula grant program, allow the Attorney General to convert it into an entirely discretionary program. And that can't be what Congress intended. So we think that's an important argument just on the meaning of 1-053. But you're saying that all other federal, applicable federal laws basically relates to grants and grantees? Grants and grantees, I think, is what Congress had in mind, absolutely. And certainly constitutional ones. And we haven't gotten to that yet, but we obviously think that there's a Murphy problem. And as you were saying, Judge Ambrow. Actually, that's a good segue, if you would. Thank you. And as you were saying, Congress used the word applicable here. And the Supreme Court has already said in a somewhat similar context that in order for something to be applicable, it's got to be constitutional. And here, that's the Ranch v. Smith case. And here, basically, you know, look, I could imagine if we were writing on a blank slate, you know, I could say this is not really a violation of the Tenth Amendment because it's a prohibition on a state having a policy. It's, you know, almost negative, not affirmative. But after Murphy, you can't really say that. Exactly. Exactly. And here, this is a really unique provision. I'm not aware of anywhere else in the code like it because this is really kind of destroying the chain of command. 1373 says that notwithstanding any other provision of law, a federal, state, or agency may not prohibit or in any way restrict a government official from sending or receiving this information. And, you know, that is a really unusual thing for the federal government to come in and tell the city how they can talk to their employees and the like or not be able to regulate them. What do you say to the preemption argument? I don't think the preemption argument does much at all for them because the preemption argument is one in which there's a regulation on private activity. Here there's no relationship. There's no regulation on private activity. 1373 speaks exclusively to state and local officials, and that's how it operates here. There's nothing else. So it would have to say private individual instead of public official in order to? Well, that is what the preemption canon is all about, and here I think that's her example of the airline deregulation proves our point because Murphy talked about the Airline Deregulation Act of 1978, and it said it did two things. Quote, it lifted prior federal regulations of airlines, and second quote, it said no state or political subdivision shall enforce any law relating to rates of any covered air carrier. And what the court said is it conferred on private entities, quote, to engage in certain conduct, end quote. There's nothing like that in 1373. This analogy fails entirely. I don't want you to forget the judicial warrant at some point, but finish up on your commentary. The last thing just before I get to the judicial warrant is just to make note of Judge Sirica, which you pointed out, which is on the statutory argument there is the statute 10228, which is found in our brief at page 44, which I think is pretty devastating for them. That statute says that you can only have this immigration function, quote, to the extent consistent with state and local law. And she said, well, there's some legislative history which says that it's about federalization of officials or something like that. The Fourth Circuit said it. Yeah, and that may be one motivation for the statute. It is certainly not the only motivation. And the text of the statute is very clear in saying, look, even when we're talking about these really important cooperative relationships in which the federal government needs the states and localities to help them carry out immigration enforcement, even then you can only do it, quote, to the extent consistent with state and local law. And what they are doing is trying to come to this court and say, no, we should be able to tie the grant program and say now we can sweep aside your state and local law. And that is something that I think statutorily is deeply problematic as well as constitutionally. Just thinking down the road to other cases, if 1373 violates the anti-commandeering provisions of the Tenth Amendment, is the missing child reporting statute in danger? That's a 34 U.S.C. 41307. It says that every state and local law enforcement agency, quote, shall report each case of a missing child under the age of 21 reported to such agency to the DOJ. I don't think so for a few reasons. I mean, first of all, you know, the Supreme Court has never even upheld that statute. Only one justice, Justice O'Connor, even spoke to its possible constitutionality in dicta in the Prince case. So I'm not sure that, you know, if the Supreme Court were to reach it. But this is so far from a reporting statute. As I was saying to Judge Rendell, this is a statute. It doesn't even actually require reporting. It bars a locality from having a policy to restrict its employees from providing information to ICE. And it severs the employee chain of command. So it's not a reporting statute. It's something very different than that. And, of course, that statute, as Justice O'Connor noted in her opinion, was one that was, to use Judge Sirica's words earlier in the argument, ministerial. That was a circumstance in which the states and localities are already collecting all this information. And there's not really any kind of deep-seated policy objection to turning that information over. Here, this is very different. It's kind of like, to use the ACLU brief example, it's kind of like the federal government and some other administrations saying, state and locality, tell us where gun owners are. Tell us where their movements are. Track them and provide all that information to us. And if they can do what they're doing here, they can do that, too. And that can't possibly be constitutional, and it's certainly not authorized by the statute. If you could go ahead. If you want to finish up on that, and I was going to go to the spending clause next. It's okay. Spending clause. I was just going to say, I'm not quite as sanguine as you about your chances under the spending clause if we get that far. So with respect to the spending clause and even the constitutional arguments, we think Judge Bailson is absolutely right, but we think that the doctrine of constitutional avoidance would say the first thing you do, as so many courts have already done, is to say that there's no statutory authority here, that this is ultra-virus. And you'd be the first court to disagree with that if you adopted her interpretation and prompt a circuit split with the Seventh Circuit. So we think this case is easier than the spending clause, but on the spending clause, as Judge Sirica's opinion in Koslow said, as the Supreme Court has said, you know, in Dole, there has to be a reasonable calculation to address the particular purpose for which the funds are expended. The discernible relationship. The discernible relationship is Koslow's interpretation of Dole, but I take it, you know, that that means the same thing. I certainly don't think Judge Sirica was trying to go back on Dole. And here, it's not just that it's about what it's about, Judge Rendell, it's to address the particular purpose for which the funds are expended. Well, the justice system, and this has to do with the release of people who have been, you know, imprisoned. To me, it's as close as Dole. I mean, it requires states to make their drinking age 21 relating to, you know, the expenditures on highways. I think it's different. I mean, in Dole, the Supreme Court found a, quote, direct relationship between the two, and that's because, you know, people who were 18 were going, like, I grew up in Chicago, were driving to Wisconsin because the drinking age was different, taking the National Highway, and so on. So I think that's what that was about. This is, Congress gave you eight purposes for what Bern JAG's about. Immigration's nowhere in there. Now, conceivably- These aren't immigration provisions. These could be viewed as law enforcement provisions. But even if you view it as law enforcement provisions, and this is our brief at pages 41 to 49, extensively about the legislative history, it's not just about reducing crime. It's about empowering local officials to reduce crime. And what they are doing is disempowering local officials. They are saying the city can't have these policies. And here, the testimony at trial is devastating from Commissioner Ross, from Abernathy, and others, saying crime in Philadelphia is at a 40-year low. Why is it at a 40-year low? In part because of policies like this that bring people out of the shadows. So they are totally the opposite of the Bern JAG program. And that also sets up an Administrative Procedures Act problem as well because, you know, all of the evidence, and there's nothing in the administrative record to the contrary, explains why this is arbitrary and capricious. Because it does, it actually increases crime. It doesn't decrease, it doesn't reduce it. I'll skip over arbitrary and capricious and go to two other issues we'd like to cover. One, substantial compliance. And then lastly, the judicial warrant. So with respect to substantial compliance, we do think that's the test. And then the question is, do we meet it? For 1373, we think we meet it even if it's compliance because this is not, as this case comes to the court, they are saying there's only one thing with 1373 that we are arguably violating. And that's because we have a judicial warrant requirement. And so they don't have all the release information. As I said before, release information is not in the text of 1373. It's every single court has found. And if you read it that way, as anything regarding, as Judge Ambrose, your question earlier was, boy, that's going to open the door to so many things. 8 U.S.C. 1231 says relevant to deportability and removal is in aliens' nationality, habits, associations, religion, and things like that. And so, you know, if that allows anything conceivably affecting removability to be turned over to the federal government, they could then seek so many things. So that's one problem with it. And then with respect to the access condition, I think the evidence at trial showed that we comply very substantially with that. We give the, that we give ICE, there are six prison facilities. They have access to all of them unless someone asserts their Miranda rights. There are five jail facilities. We give access to four of them. The only one that we don't give access to is the PDU, and that is police headquarters. And the evidence at trial explained why. That's a circumstance in which people are detained on average of 14 hours. Many are released after four hours. And to bring people in, to allow ICE agents into there, is to destabilize the way that headquarters operates. And, you know, and so the test is substantial compliance, as Judge Baleson found at A77 to 80 of his opinion. And we think that this does substantially comply. It meets the essence of what these conditions are about. Not perfect by any stretch, not perfect from their standpoint. But for us, it strikes the appropriate balance that the city, for a long time, for a decade, for over a decade, has tried to strike in this regard between being sensitive to federal law enforcement interests and state law enforcement interests, but at the same time bringing people out of the shadows, making sure they can obtain civil services without fear of reprisal, whether it's victims, witnesses, people who have health concerns, domestic violence victims, and the like. What is our, what is our statute, what is our appellate review over Judge Baleson's findings of substantial compliance? I think, I assume that because that does have a factual component and there was a trial here, I think it would have to be clear error or something like that, and I think even there was a line in the Seventh Circuit opinion in City of Chicago which suggests that would be the standard of review as well. You had asked earlier about the judicial warrant requirement. And there, look, I think that's the hardest part, Judge Sirica, to defend of Judge Baleson. I thought he got everything right, including that, but I do think that's the hardest thing to defend. We do think that, in the end, he has reached the right, he has reached the right order, but, you know, to the extent you have concerns about the way the order is worded, you know, we don't have, you know, the hugest of objections to that. How was that issue even before him? So it was before him because, my friend earlier said, that's absolutely right, we didn't ask Judge Baleson to rule specifically that way because our grant was actually pending at the time, and we didn't want to encumber the fiscal 2017 grant with another set of hearings about whether or not to impose this order or not. And not only across the parties before him, but across all government entities. But their whole view is it's a unitary executive, and the Department of Homeland Security has participated in this, so I can't imagine that's really an objection. Their objection is to cite the Wright and Miller treatise and say we didn't have an opportunity to answer this specific relief. And I think if you look at that page of Wright and Miller, it's page 2662, it actually does not say what they are saying. It says that the opposing party has to have an opportunity to challenge on the basis of what is alleged in the pleadings and justified by the plaintiff's proof. So all Wright and Miller is saying is, as long as they've had an opportunity to deal with exactly the underlying allegations that gave rise to this specific relief, that's enough. And they, of course, had an opportunity to have a Rule 60B motion, a Rule 59 motion after this stuff was imposed. They did none of that, and so now they're complaining to this court and saying the order should be modified. But I actually don't know that that procedurally is right. They have had these opportunities in the past to assert their concerns, and they haven't availed themselves of them. And then just on the merits of this, we think that the judge's order does follow quite naturally from two of the conclusions Judge Bailson reached. First is that the city's detainer order obligates city officials to honor the warrants, and that's a reasonable and lawful exercise of the city's discretion. That's the first thing he found. And the second is that the Justice Department's attempts to force the city to abandon its warrant policy are unlawful because it runs headlong into all of the merits concerns that we've been talking about. And so for that reason, I do think at the end of the day, Judge Bailson actually got it right, even on this. That is, it flows pretty naturally from all of the different merits conclusions that he reached before. And for you to reverse him again, you'd have to find each one of these four different holdings is wrong and prompt a circuit split with the Seventh Circuit and every court to consider this set of issues. Does judicial warrant apply no matter, the issue come up no matter how we decide? Does the judicial warrant issue survive no matter how, no matter how we come out on the other issue? I think... Is it a standalone issue? I think they're teeing it up as a standalone issue for us, given the way he worded it, which is, you know, the warrant is required only, quote, to the extent ICE is seeking a transfer of this information. I think it's a limited warrant, a limited order, and so it doesn't impose some huge obligation on the city. But if you reversed us on all of the merits arguments, then this part of the order obviously would fall. Before you sit down, just one final question on the substantial compliance on the notice requirement. There is an argument that the government makes, in effect, that you're complying with the notice requirement you prefer but not the one that actually exists. The condition requires the city to provide the government with an incarcerated alien's release date when the government asks in writing. But the city shares an alien's release date only if federal authorities first obtain the warrant. How is that substantial compliance? Because for a large chunk of the people in this, who haven't been adjudicated to commit a crime, their big concern here is someone will come out who is a criminal. Most of the people they're even seeking this information about aren't criminals. They're really concerned, of course, about the criminals. And with respect to those criminals, getting a warrant, as Judge Bailson found, is the solution. And indeed, in the last two years, of all of the requests they've made, under 10, and this is what Judge Bailson found, have been people adjudicated of a crime. So for every one of those people, they can get a warrant and there is substantial compliance, and that's the heart of their concern. And that's why we think the city has struck the right balance here between providing that information for the criminals, for criminal suspects, and things like that. But to go further than that and to say it applies to everyone is, I think, a bridge too far, both statutorily and constitutionally. Thank you very much. Ms. Allen. Thank you, Your Honor. Just to pick up where counsel left off, to be clear, counsel says that we could get a judicial warrant for anyone who's a criminal, and Judge Bailson seemed to make the same error. But immigration removal proceedings are civil. They follow administrative warrants. ICE would work with the U.S. Attorney's Office to get a criminal warrant when they're prosecuting someone for illegal reentry, but not for civil removal proceedings. So there's no basis for the city of Philadelphia to require a warrant that Congress chose not to require. And I'd like to make a few points in response. First, on the Special Conditions Authority. The city's position is that in 2006, when Congress added the phrase, including placing special conditions on all grants and determining priority purposes, that Congress didn't do anything. They had given no meaning to that language. They argue that in a lot of instances, Congress will have a provision that states that a particular government official can exercise certain duties, including, you know, X, Y, and Z. And that... I'm just talking to one of my clerks. Oh, sorry. And that may be true, but here what's different is that Congress added the including language. There was nothing to clarify. The city hasn't identified anything to clarify. And indeed, there is nowhere else in all of Title 34 that refers to special conditions or priority purposes. So on their view, Congress added this phrase to refer to absolutely nothing. Well, but maybe it clarified. I mean, maybe before, you know, power vested was viewed as just doing certain things, but maybe wasn't certain that it included adding special conditions, and then clarified, including special conditions. Instead of saying, and in addition, may impose special conditions. Your Honor, that would be the case maybe if there were some other grant program that allowed the AAG to impose special conditions, and it was unclear. But here, there's nowhere else that mentions either special conditions or priority purposes. So that language would do absolutely nothing. And again, we also think that if there were another statute that said the AAG could impose special conditions, there wouldn't be any need for Congress to clarify that his authority included imposing special conditions. Is there any magic to the word special as compared to including conditions on? Yes, Your Honor. We think that because of the way that it's phrased, it says including placing special conditions on all grants. If it had just said including placing conditions on all grants, someone might have thought that that meant placing uniform conditions that apply to all of the grants that OJP administers. And so we think that Congress chose the word special to indicate that the AAG could impose conditions for particular grant programs that are different. Wouldn't it be more helpful to your position if, as I asked before, if including was instead the word and, and imposing special conditions instead of including? Because including seems to most of us, it's a subset of something. It's either a subset of what the AAG previously has or it's delegated by the Attorney General, which means the Attorney General has to have that authority to begin with. Well, Your Honor, if you think that the Attorney General has the special conditions authority, you know... Well, I mean, no, but you have to have, you have to have the authority in order to delegate it. Yes, Your Honor, I understand that you're saying that generally the word including is used to refer to the category that's already been defined. Right. Here, so first of all, we've noted in our brief the cases in which the Supreme Court and other courts have said that the word including can mean and. But here, what's critically important is the fact that Congress added the including phrase and it would do no work. It's an amendment. There was no reason to add it unless it was to make clear, as the legislative history says, to make clear that the AAG is allowed to add special conditions and determine priority purposes. In addition, Your Honor, we think that you could read that provision itself as a provision of the chapter that is vesting that authority in the AAG. Now, Mr. Cutchell noted that on eight occasions there's been an attempt to try to get through Congress legislation that either sets or clarifies, depending on your point of view, what kind of authority is given, but it's never gotten through Congress. Doesn't that tell you a little bit? Your Honor, I think he's referring to amendments proposed to require actual detention of aliens as opposed to merely the information sharing that Section 1373 requires. But I would like to talk about Section 1373 to correct a couple of things. I mean, the city doesn't at all address the interaction of the federal regulatory scheme with the state and local criminal regulation of aliens. And we think that that's important both for explaining why it's the type of preemption provision that Murphy discussed and in explaining why these are really minimal targeted conditions that are just designed to ensure that the city isn't interfering with federal law enforcement. And again, what happens is if the city takes someone into criminal custody, that person legally cannot be removed until they're released from the city's custody. And in order for that system to work, Congress allowed cities and states to have that priority on the condition that they won't then interfere with the federal government's ability to take custody of the same people when they're released. And that's the way that Congress envisioned that the system would work. And that's why we think the INA itself, under just obstacle preemption, would preempt certain policies that interfere with that. And 1373 is naturally an express preemption provision that goes along with those provisions of the INA to make clear that states and localities can't have policies that prohibit this sort of information sharing. And we think that that's relevant both to the Tenth Amendment and just to illustrate that here the authority that the Department has exercised is very minimal. It also relates to information regarding immigration status. The city argues that there's another statute that says any information relating to aliens. That is not the interpretation that we're advocating here. This says information regarding immigration status. Here, when an alien is released from custody, that changes the legal status of whether he can be removed. Generally, while he's in state criminal custody, he cannot be removed. But once he's released, he can. And indeed, often the INA requires detention and removal of criminal aliens when they're released from state and local custody. And so the fact that it's a legal change makes clear that it's different than any information regarding an alien. And we think that it's clear that release date is information regarding immigration status because it determines whether the alien can legally be removed. And again, I think that the missing trial reporting statute would be called into question if the information sharing requirement that's at issue here were unconstitutional. We think that this is different than the examples the city is talking about. The city is arguing that the United States is requiring them to go out and find information and locate people and that's not at all what 1373 does. All it does is prohibit policies that restrict the sharing of information that the city already has. And we think that the Supreme Court has never held that such information sharing restrictions would violate the 10th Amendment. And this court shouldn't go that far, both because we don't think it's really properly before the court and because we think it's clearly permissible under the 10th Amendment. Thank you very much. We'll take the matter under advisement. I would ask if a transcript could be prepared of this oral argument and to split the cost if you would, please. Thank you very much.